02-11-503-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00503-CR

 

 


 
 
 Anthony George Hannon
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th
District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Upon
his plea of guilty to one count of theft over $20,000 but less than $100,000
and his pleas of true to enhancement paragraphs, a jury convicted Appellant
Anthony George Hannon of the charged offense and assessed his punishment at
ninety years’ confinement.  The trial court sentenced him accordingly.  In two
issues, Appellant contends that the trial court erred by denying his objection
to the jury charge and that he received ineffective assistance of counsel at
trial.  Because the trial court did not err by denying Appellant’s objection to
the jury charge and because Appellant has failed to sustain his burden to prove
ineffective assistance of counsel at trial, we affirm the trial court’s
judgment.

Facts

On
February 2, 2011, Appellant was indicted on one count of theft over $20,000 but
less than $100,000.  The indictment contained an enhancement paragraph alleging
that he had previously been convicted of possession of four grams or more but
less than two hundred grams of cocaine and that the conviction had become final
before the commission of the theft.

At
his arraignment on March 1, 2011, Appellant pled not guilty.  On August 10,
2011, the State filed a notice of enhancement, stating that it intended to use
five prior convictions (including the conviction previously alleged in the enhancement
paragraph in the indictment) to elevate the punishment range for the third-degree
felony theft offense to that of a habitual felony offender.  The notice then
listed the five prior convictions that the State intended to use.  Each
paragraph stated that the conviction “became final before the commission of the
aforesaid offense.”  At his trial on October 18, 2011, Appellant changed his
plea to guilty.  He pled true to the enhancement paragraph in the indictment
and to the enhancement paragraphs alleged in the notice of enhancement.

Appellant
elected to have his punishment determined by a jury.  At the charge conference,
Appellant objected “to the Court’s entire charge on punishment,” arguing that he
had not been given notice “that the Court could submit a charge of 25 to life
under the habitual [offender] provision of the Penal Code.”  Appellant then
elaborated,

Specifically, Your Honor, the
allegations that are made on the notice of enhancement fail to allege in any
specificity that—each of those enhancements, and the same objection would apply
to each one, Your Honor, that it was—had become final before the commission of
the offense before it.  They all refer to they became final before the
commission of the aforesaid offense to the primary charge in the indictment.

Your Honor, we believe that failure to
allege the consecutive nature or that one became final before commission of the
prior offense that’s alleged as the enhancement fails to give the defense
notice that the provisions of the Penal Code and intention to enhance to 25 to
life are effective.

Because of failure of those two, Your
Honor, the notice of enhancement and the indictment taken in whole, we object
to the submission of the Court’s charge on punishment as provided to counsel.

Specifically, Your Honor, we think the
appropriate charge would contain a—under the pleas would contain, Your Honor,
an instruction to the jury that this is a third degree felony enhanced to a
second with a primary—appropriate punishment range, Your Honor, of 2 to 20 and
up to a $10,000 fine, that being because a third degree felony being alleged
and pled to with the enhancement count would elevate an enhancement to a second
degree only.  So we have that objection to the Court’s charge on punishment.

The
trial court overruled the objection.

Charge
Error

In
his first issue, Appellant argues that the trial court improperly instructed
the jury on the range of punishment for a habitual offender and improperly
allowed the jury to assess his sentence under the habitual offender provision
because neither the indictment nor the enhancement notice informed him that “the
Court could submit a charge of 25 to life under the habitual [offender]
provision of the Penal Code.”  Appellant also argues
that “there is no evidence to show that the offenses were committed and became
final in the proper sequence . . . .”

The
State’s notice of enhancement provided that the State sought to sentence
Appellant as a habitual felon.  Appellant pled true
to each of the enhancements.  Appellant’s three penitentiary packets were
admitted into evidence to show that he had been convicted of those offenses
contained in the penitentiary packets and had been to the penitentiary at least
three times in the past.  The State also proved the sequence of convictions.  Additionally,
the trial court instructed Appellant on the habitual range of punishment.  Appellant
did not claim surprise and did not ask for a continuance.

Appellant argues that each of the enhancement allegations provided
that the enhancement provision became final prior to the commission of “the
aforesaid offense,” and that the offense referred to as “the aforesaid offense”
could be only the new offense for which Appellant was on trial.  Appellant is
correct that the enhancement notice lists the enhancement offenses in reverse
order.  This court has held, however, that

[b]ecause
it was not necessary for the State to allege the dates on which the enhancing
convictions became final or the sequence of the enhancing convictions, the
indictment[’]s nonsequitur allegation that the 2003 DWI conviction was final
before the commission of the 1998 assault is immaterial.  The enhancement
allegation[]s recited the counties, courts, cause numbers, and dates of
conviction for both enhancements; this was sufficient to enable [defendant] to
find the record and prepare for trial regarding whether he is the convict named
in the convictions.[2]

It is therefore likewise of no consequence that the enhancement
offenses were not listed in proper sequential order in the case before us.  Nor
did Appellant claim surprise at trial when the jury was instructed on habitual
offender punishment.  Appellant received ample notice from the State (more than
two months) and the trial court that the State would seek to punish him as a
habitual offender.[3]

Finally, if his complaint is that the evidence is insufficient to
prove him guilty as a habitual offender, we disagree.  Appellant
correctly argues that section 12.42(d) of the penal code requires the State to
prove a particular chronological sequence of convictions:  The first conviction
becomes final, the offense leading to a later conviction is committed, the
later conviction becomes final, and the offense for which the defendant
presently stands accused is committed.[4]  Having closely reviewed
the entire record, we hold that the evidence sufficiently proves the
appropriate chronological sequence of convictions.

At
the beginning of the punishment phase of his trial, Appellant acknowledged all
five of the prior convictions used for enhancement and entered his pleas of
true to five prior felony convictions contained in three separate penitentiary
packets that were admitted into evidence.  He acknowledged that he could be
sentenced to a term of twenty-five years up to ninety-nine years or life
imprisonment if the State proved the convictions in the appropriate sequence.  The
record reflects that the State proved the prior convictions at trial and that
they are properly sequenced.

Because
Appellant had ample notice that the State would seek to prove that he was a
habitual offender and pled true to the enhancement allegations and because the
State additionally proved that he was a habitual offender, we hold that the
trial court did not err by overruling Appellant’s objection to the jury charge. 
Consequently, there is no need for a harm analysis.[5]
 We overrule Appellant’s first issue.

Ineffective
Assistance of Counsel

Appellant
frames his second issue as a general claim of ineffective assistance of
counsel.  Specifically, he states, “APPELLANT HAD INEFFECTIVE ASSISTANCE OF
COUNSEL AT THE TRIAL LEVEL.”  Essentially, he argues generally that trial
counsel made bad decisions and failed to act at various times during trial and
thereby hampered Appellant’s chances of success at trial.  Appellant claims that
trial counsel did not acquaint himself with the facts of the case “as his cross
examination of all witness [sic] was sorely lacking.”  Appellant also contends,
“Had defense counsel acquainted himself with the facts of the case, he would
not have advised Appellant to plead guilty.  There was a potential unlawful
search issue that defense counsel failed to investigate prior to trial and
failed to thoroughly examine while taking the witness on voir dire.”  Appellant also points out that trial counsel filed
no pretrial motions.

To
establish ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.[6]

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.[7] 
The issue is whether counsel’s assistance was reasonable under all the
circumstances and prevailing professional norms at the time of the alleged
error.[8]  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.[9]  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.[10]  “In the majority of
cases, the record on direct appeal is undeveloped and cannot adequately reflect
the motives behind trial counsel’s actions.”[11]  To overcome the
presumption of reasonable professional assistance, “any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.”[12] 
It is not appropriate for an appellate court to simply infer ineffective
assistance based upon unclear portions of the record.[13]

The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, that is, a trial
with a reliable result.[14]  In other words, an appellant
must show that there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different.[15] 
A reasonable probability is a probability sufficient to undermine confidence in
the outcome.[16]  The ultimate focus of
our inquiry must be on the fundamental fairness of the proceeding in which the
result is being challenged.[17]

The
evidence showed that Appellant and two friends stole an El Camino in Fort
Worth, drove to Granbury, used the vehicle to smash through the front window of
the First National Bank of Granbury, stole the ATM machine out of the bank, and
put it into the back of the stolen El Camino.  The break-in was captured on the
bank surveillance video.  After a high-speed chase, the El Camino crashed, and
the men ran.  As Appellant ran, he jumped over a fence and hurt his leg,
allowing peace officers to capture him.  Inside Appellant’s truck parked near
the bank, the officers found a list of addresses of banks that they suspected
were targets for possible burglaries.

The
trial court thoroughly admonished Appellant regarding his right to a trial and
the consequences of pleading guilty and of pleading true to the enhancement
counts.  Appellant had an extensive criminal record,
and the evidence of his guilt was overwhelming.

Appellant filed a motion for new trial, but alleged only that the
verdict was contrary to the law and the evidence.  He did not raise ineffective
assistance of counsel, nor did he inquire regarding trial counsel’s trial
preparation or strategy.  From our review of the record, trial counsel’s
strategy appears to have been to have Appellant assume responsibility for his
actions, of which there was overwhelming evidence, and to ask for mercy by
putting on evidence of Appellant’s good character and the fact that family
members needed him to care for them.

Applying the appropriate standard of review, we hold that Appellant
has failed to sustain his burden of showing that trial counsel rendered
ineffective assistance.  We overrule Appellant’s second issue.

Conclusion

Having
overruled Appellant’s two issues on appeal, we affirm the trial court’s
judgment.

 

 

LEE ANN DAUPHINOT JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 14, 2012









[1]See Tex. R. App. P. 47.4.





[2]Derichsweiler v. State, 359 S.W.3d
342, 350 (Tex. App.—Fort Worth, no pet.).





[3]See Pelache v.
State, 324 S.W.3d 568, 577 (Tex. Crim. App.
2010).





[4]See Tex. Penal Code
Ann. § 12.42(d) (West Supp. 2011); Ex parte Miller, 330 S.W.3d 610, 624 (Tex. Crim. App. 2009).





[5]See Throneberry v.
State, 109 S.W.3d 52, 60 (Tex. App.—Fort Worth
2003, no pet.).





[6]Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Davis v.
State, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); Hernandez v. State,
988 S.W.2d 770, 770 (Tex. Crim. App. 1999).





[7]Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999).





[8]See Strickland, 466
U.S. at 688–89, 104 S. Ct. at 2065.





[9]Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d
59, 63 (Tex. Crim. App. 2001).





[10]Salinas, 163
S.W.3d at 740; Thompson, 9 S.W.3d at 813–14.





[11]Salinas, 163
S.W.3d at 740 (quoting Mallett, 65 S.W.3d at 63).





[12]Id. (quoting Thompson,
9 S.W.3d at 813).





[13]Mata v. State, 226
S.W.3d 425, 432 (Tex. Crim. App. 2007).





[14]Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.





[15]Id. at 694, 104 S.
Ct. at 2068.





[16]Id.





[17]Id. at 697, 104 S.
Ct. at 2070.